et al, and Daniel Barham. Arguments not to exceed 15 minutes for plaintiff, 15 minutes to be shared by defendants, Mr. Kellum for the plaintiff appellant. Good morning, your honors. Good morning, and we would notice that Judge Keith is by video, so please speak up so that the video transmission is clear. I will. Thank you. May it please the court. My name is Nate Kellum, and I represent the appellant, John Brindley. Mr. Brindley comes to this court seeking relief, relief from a flat ban imposed on his speech in Virginia Run Cove by the City of Memphis, a street that bears all the earmarks of a traditional public forum because a nearby property owner opposes his message. Virginia Run Cove is a traditional public forum by its appearance, by its function, but even if this court were to find otherwise, the all-encompassing ban that's being imposed here would not survive scrutiny in any type of forum. First, Virginia Run Cove is a traditional public forum. This court in the case of United Church of Christ versus Gateway Economic Development Corporation, in that case, this court also dealt with private property that is also the case here. And there, this court placed great emphasis on the expectations of an average observer. You have repeatedly said this is a traditional public forum. And in looking at Virginia Run Cove on the chart, it appears to be a cul-de-sac that almost looks like the bottom of a thermometer, an old thermometer, with businesses sort of circling that. And I know that the district court made reference to the plaque, but tell me why this is a, quote, traditional public forum. What do you base that on and how do you distinguish that from something that would not be a traditional? Is it just because it is a street? Certainly. Is it, I understand it's maintained by the proprietors who are in that cul-de-sac. So tell me why it is traditional. Certainly. Because of how it appears. Just like in the United Church of Christ case, it appears to be a street. And Judge Mayes in his decision noticed that, that that's what it appears. It doesn't appear to be any type of private inlet pathway. And that was what struck me, though, about the record here. Your complaint says that the cove is used for walking, loitering, talking on cell phones and socializing with others. But none of your pictures show anyone on, in that area. Where does the record reflect that, in fact, this area is used for walking, loitering, talking on cell phones? Where's the support for that allegation? Certainly. In a couple of respects, Judge. One is that that's in part of the verified complaint based on observations of Mr. Brindley. There are no photos. That is certainly true. But that's based on his observations, his information, that those type of things take place in that cove. But also just by its very, very, very nature. I'm sorry. I don't recall. Certainly. His verified complaint indicates that he was at that location on a number of occasions to look. I thought it was, I figured out where it was. I came down to make, to say what I went on that area. Is there a verified allegation of seeing physically and knowing that, in fact, this area is used in the way it's alleged to be used? That's based on his information. But also he did go there twice. He went there one time just to check it out. He learned about the opening of the clinic. And so he drove to the cove. And he was able to use his GPS to be able to do it. Virginia Run Cove was shown his GPS. And so he goes out there. And he noticed it looked like a typical public street. He didn't really notice any difference about that. And then also he was there actually on the day you stopped. So on both occasions, he had every observation that this is a public street. And then also he has access to information that there was walking and use of cell phones and this sort of things on the cove. And so based on those... What access was that? What people had told him that people who work in that area had advised him of this. But I thought you said earlier that he had, in his verified complaint, he had gone out and observed this for himself. In his verified complaint, which is based on information and belief, he states that Does his verified complaint in any way address, for example, the upkeep of the street? Whether that's provided by the city or by the proprietors there? And I understand that that's not the defining issue on this, but just for my own information. There is information that the city maintains the street. It is a privately owned... I'm sorry. I apologize. The owners maintain the street, not the city. I misspoke. The owners maintain the street and that's evidence in the record. And so this is what puts this case really directly in line with the United Church of Christ case because there that was privately owned and also is maintained by the private owner. However, because it appeared to be a public sidewalk... But there's no sidewalks here, correct? It's a street. It's a street only. Certainly. So is the loitering and walking and telephone calling going on in the street? Sure. In the actual physical street? Sure. There's pictures that show it's a cul-de-sac. It's a wide cul-de-sac and you can walk on the side of it. Just like a person would walk in the street in a neighborhood, that type of thing happens on the side of the street, certainly. But really, aside from whether there's loitering or walking or proof thereof, really a more cogent point here is just the very nature of it and how it appears. And what it appears to be is a city street because it intersects with a city street. There's really no difference at all between the intersecting street of Summer Avenue, if you're familiar with the area, it looks just like it. And so there's nothing that would tell an average observer, just like in United Church of Christ, hey, you're going into a private area here. And that gets back to your original question is, that would be different from going into like a medical complex where you can tell, oh, I'm going into an area that is somewhat different than a public area. Or I'm going into an apartment complex. But weren't the street signs different colors? Green street signs being for public streets and I think blue for private ownership. And wasn't there a blue street sign in this? It was a blue street sign. There's certainly no evidence that an average observer would know a difference between a blue or green street sign. But in fact, there is a difference, correct? I don't know that there is. But I know that this street sign is blue. And the rest, the public street signs are green. I mean, you would concede that, correct? There's nothing in the record regarding what typical street signs look like. But I don't, we don't contest that. If that's what the city says is that blue street signs are typically reserved for private-owned areas and the green street signs are for public-owned areas. We don't contest that. With the fact that you don't contest that, how do you respond to the city's contention that you failed to meet your evidentiary burden of demonstrating that Virginia Rond Cove is or has historically been used openly by the public? I understand you've said that Mr. Smith, you've said on belief and information. But is that the sole basis for your meeting the burden? What's the evidentiary burden? No, not at all, Your Honor. That only relates to people talking in the area or that sort of thing. The question really is how do you meet your burden on that? Sure. In two ways. Either one would be sufficient. One is how does it appear? How does it appear which we've addressed and appears to be a city street. Secondly is the fact that it is a public right-of-way as established by Tennessee case law. That this street is dedicated to the public use forever. And so that's what it is. It is a public right-of-way. And so in reality, since it's a public right-of-way, then people do have the right to walk on that street. They have the right to use cell phones. They have the right to do that sort of thing because of the very nature of it. Your opinion, counsel, might argue that it is public to the extent that it grants easements for electricity or utilities, but not otherwise. And how do you respond? That is their argument. And I think that betrays the plain reading of the dedication because the dedication says that it dedicates easements as well as streets. And so you do have an easement for MLGW for the utility lines, but also you have a street which is subject to dedication. And by virtue of that, it's a public right-of-way and that's how it appears and that's exactly how it functions and that's what it is. So if it's for public use, if it's dedicated for public use forever, can there be or could there be restrictions on the extent of that public use? I mean, there are obviously many different purposes or activities. So how would that, how could that affect your argument? Oh, I think there certainly could be restrictions that the city could impose. It could say, for one, if it felt well because of vehicular traffic in the area, we can't have people standing in the street. They could do that just like they could in other streets. But what they can't do is they can't do what they did here and that is that you cannot speak at any time under any condition. You cannot be here in the street because you're on private property when, in fact, it's a traditional public forum and a public right-of-way. You argue in a footnote that the City of Memphis violated the due process rights of Mr. Brindley. What cognizable constitutional right are you referring to? Sure. That is basically due process is that if you're going to violate a law, you need fair notice of it. And so if you're going to violate... What is the, I mean, you sued the city. So what is it that the city has done that violates his due process rights? Well, they threatened him up with, if he didn't move, he'd be, he would violate the trespass law. And so that violates his due process rights when he doesn't have fair notice that he could be violating the law. And how do you move that to the whole city of Memphis? You argue a policy? I'm struggling with an argument that there's a policy of excluding people. What evidence is there or argument or even developed argument is there that there is a policy in the city to do this? Certainly. What the policy is is that, as was done here and is really as reflected in the arguments of the city, is that if it's privately owned property, that's the end of the assessment. They don't try to determine, hey, is this a traditional public forum like in the United Church of Christ case? Even though that's privately owned, it's a traditional public forum. If it's privately owned and someone says you have to leave, then that's it. And so that policy violates his due process rights because he's not... Help me understand one more time. I want to draw you back to your allegations or your support for the claim that it is a city policy. You know on this occasion someone was called and someone came out and said, this landowner says you're on their property, you need not to be here. How is that an allegation of an actual city policy? Sure. That is what happened in this particular instance, which is evidence of it. But also in their pleadings, they don't back away from that. They say, yeah, if it is privately owned, then they have a right to trespass the violator. And so that does not involve any type of analysis whether or not it's a traditional public forum or not. And so that's the concern. So you're saying that if there is a complaint by a property owner, the city violates some policy by responding to and taking some action based on a complaint by the property owner? If what is involved is speech in an area that has an appearance of being public, yet it is incumbent upon the city to determine is this a traditional public forum or is it not? Not simply is this privately owned or not. And that would be the concern. Good morning, Your Honors. My name is Barbara Davis. I'm a Senior Assistant City Attorney for the City of Memphis, and I represent the City of Memphis in this matter. Ms. Betsy McKinney represents Officer Barham, and we will be sharing the allotted time. Please excuse me for my voice. I have a very bad sinus infection. The city asserts that the district court correctly denied the injunctive relief in this case. The prevailing theme in the court's order was the court determined that it would not grant extraordinary remedy of a preliminary injunction based on inferences and disputed proof. The court is correct when it asks counsel regarding whether the verified complaint had independent information or additional information regarding the allegations made in the complaint regarding the use of cell phones and loitering, etc., as observed by Mr. Brimley, because as the court knows, that verified complaint did not contain any information other than that statement by Mr. Brimley. Those photographs... I want to interrupt you because I know you are sharing time and so your time is short, but tell me why United Church of Christ does not control this particular situation as Mr. Kellum argues. As it relates to private property, in this particular case, the city takes the position that the private property here only invites the public, and it's based on all of the filings in the recordings. The recorded documents make clear that this is private property. When you say it only invites the public, what does that mean? For specific purposes. There are very specific purposes for which the public is invited to use of the property. As the court indicated, they are the ones who maintain the property. It was made clear in the planned development document that this street, Virginia Run Cove, would be private property. What is it about, though, the cul-de-sac Virginia Run Cove that puts the public on notice that their ability to go onto that property is limited and is by invitation only, or is to invitees only? What is it about that, generally looking at it, though, that puts the public on notice? As Mr. Kellum regarding the street, the signage. The signage is different. Here's the photograph from, if I may approach, this is one of the photographs that was presented in the record by Mr. Kellum, which shows... I'm going to hold this up so Judge Keith can see it also. It's in the record. An affidavit presented by the city from one of the engineers stated that the signage for city property and streets is green and the signage for private property is blue. That is a photograph that was presented in the verified complaint or attached to the verified complaint of Mr. Brindley. That puts the public on notice regarding the fact that it's private property. How does that notice satisfy United Church of Christ and the McGlone v. Bell cases, both of which said this looks and functions like a public street and isn't that enough to make it a traditional public forum? Well, it may appear as a public street, but that is not the only test of whether or not it's a public forum. The court determined in this particular case that Mr. Brindley had not met his burden in showing that it was a public forum. Just because of the appearance of the street, he had to show additional basis on which to develop that it was a public forum. The court was satisfied that the city had shown through its development of all of the documentation that had been filed with the various files as related to this particular property. You know, Mr. Kellum is arguing here today, the reason why he is, because he said the court erred in that determination. And looking at McGlone, the court there said that a privately owned sidewalk on a university campus was a traditional public forum. Acknowledging the private nature of it, they went on to say that because the perimeter sidewalks at the university blend into the urban grid and are physically indistinguishable from public sidewalks, they constitute traditional public fora. Now here we know there were no sidewalks. There are no sidewalks here. So when there are no sidewalks, the street in that cul-de-sac appears to be indistinguishable from the other surrounding areas. So why doesn't that put us squarely in Church of Christ and in McGlone? That's the question. Why doesn't it put us squarely there? Because that's not the only factor that you look at. The appearance is not the only factor. And I know you looked at, I understand your answer is that you looked at state law. Do you have any other cases where state law easement rights were the determinative factor in a free speech case? I can't say that I do, Your Honor. So under your argument, the concern would be, let's put aside what the particulars are here. The question is where the public views something as a traditional public forum, the expectation would be if there were other types of facilities there that people would assume that they could speak to public issues about those facilities. Do you have, what would you say your best case is for saying, for upholding the decision of the district court? For opposing the decision? No, for upholding. Oh, upholding. Upholding. What's the best case? Because I know we've talked a lot about property law, but I don't think, you don't have a case, I'm not familiar with cases that this easement kind of issue controls. What is the best case for your argument that this is not public, not a traditional public forum? Well, just the fact, Your Honors, that the documentation in the record shows clearly that it's private property. The quick claim deed, the city would agree that to the extent that Mr. Brindley argues that there was a dedication, it was revoked when the quick gave to the city the rights of easement, the use of the easements within that development. Also the covenant of declarations, which set out that the maintenance of the property was exclusively with the owners. And so our position is that the property law is what obtains, in this case, to show that it is not a public forum. Just going at this a little bit differently, can you recall what primary case Judge Mayes relied on to support the outcome? You told us the factual parts of it, but what case did he rely on to ground his decision? As it relates to the property issue, that was Smith v. Black, as it relates to the revocation. Is that the best case to support where you want to come out today? As it relates to the dedication, because that seems to be the crux of Mr. Brindley's argument that this street was dedicated to the public. Well, only to the extent that it was dedicated, and if it was revoked, then that no longer supports the position of Mr. Brindley. Any further questions? I think not. Thank you. Good morning. May it please the Court. My name is Mary Elizabeth McKinney, and I'm here representing the lieutenant that was called to the scene, Lieutenant Barham, in his individual capacity. The issue here today is whether the plaintiffs met their burden on requesting an interlocutory injunction, a preliminary injunction, and they simply did not meet that standard. Looking at the record in this case, plaintiffs would not have been entitled to a summary judgment in this case, and plaintiff is expected to go beyond that standard to enjoy a preliminary injunction, and they simply did not meet that standard. Allegations that people are standing around talking on telephones, it's not enough. The record establishes that this street was a private drive. There are no sidewalks. There's not even parking on this cul-de-sac. It's a dead-end entry and exit for the businesses that are located on that cul-de-sac, and the government has a strong interest in protecting property rights, and when they're summoned out by a private party enforcing their private property rights, the government has to respond, and in this case, Lieutenant Barham had to respond to the allegation of a trespassing claim in this cul-de-sac. The plaintiff was standing in the street. Again, there's no parking. People are going to be driving by and pulling into businesses where the parking is located for each business. How do you respond to the arguments that this fits within United Church of Christ and McGlone? I respond that, you know, in that case, they met their burden, and in this case, plaintiff has not met their burden. There is not a sidewalk. You know, this street is maintained by the property owners. The city has offered evidence that the dedication was for an easement of the light, gas, and water company to provide services to the property owners. They are taxed on this cul-de-sac. They maintain the roads of this cul-de-sac. The signage differentiates it as a private drive, and the plaintiff, again, is standing in the middle of an entry and exit way where customers of these businesses proceed in and out of the businesses. It's simply not conducive to spreading a message, walking around, loitering. It's just the design of the actual property is not conducive to that. But beyond the physical characteristics, plaintiff was charged with proving historical and traditional use of the property, and no evidence of that was offered. Beyond that, he's supposed to establish a likelihood of inferences and disputed facts were not enough, the court said. And the court, in its discretion, weighed the evidence that was presented in this case and simply said it was not enough. How do you respond to the argument that there's some sort of due process violation? In order to establish a due process, you have to identify an underlying constitutional violation. And in this case, because the court analyzed this as a non-public forum, it found that the restriction on the speech here fell within that analysis. It was reasonable. And so because there was no underlying constitutional violation, there can be no due process allegation that the plaintiff was denied some sort of constitutional right. And that's how I would respond, Your Honor. If there's no further questions, that's all I had on behalf of Lieutenant Barham. Thank you. Mr. Kellen. Thank you. It's undisputed that there are no signs saying this is private property. There's no signs indicating it would be trespassed to come into Cove, although there are signs that indicate if you go on the property of one of the businesses, it would be trespassed. There's no gates. There's no pillars. There's nothing that would indicate to an average observer that you're entering into private property. So really the only difference, the only thing in the record is it's a blue sign versus a green sign. That you have a blue sign saying Virginia-run Cove instead of a green sign saying Virginia-run Cove. And I believe under the authority of United Church of Christ, it's just simply not enough that an average observer would not know that. The fact that there's not a sidewalk. Most of the cases that you've cited and that address this public forum speak in terms of the rights of a sidewalk, which is like an invitation to individuals. I would think that practicality would suggest that there's not an invitation to people to loiter in the street itself. So why is that not a distinction that matters? Well the, historically just by the United States Supreme Court decisions, that hadn't been recognized as a distinction. Basically the three they always list are sidewalks, parks and streets. In Frisbee v. Schulz, it's a 1988 decision. It dealt with a street. It is similar situations in a residence. And so the court held there that streets, just like sidewalks and parks, are considered traditional public forum. And so just by virtue of what the cases have held, is that there really is no true distinction between streets and sidewalks. Although there certainly could be some practical application issues where certainly someone can't be in the middle of the street when there's traffic there. But I believe someone can stand to the side of the street if there's no traffic concerns. And that's what Mr. Brindley was trying to do here. As your opposing counsel have correctly pointed out, your burden here. And I understand that it's a verified complaint, which means that it is admissible as evidence. But that's not the standard here. The standard here is that you have to establish by a strong likelihood of success on the merits. How is it that you have stepped through to that burden? Sure. Because there's really no question here regarding how the street appears. That there's really nothing that would indicate to an average observer that it's private other than the blue sign. So that is undisputed. And so that establishes what is in the United Church of Christ. So that meets the burden. But also if you look at the public right-of-way question, the Judge Mays did hold that subsequent conveyance could revoke the dedication. But actually Tennessee case law indicates otherwise. What Tennessee case law shows is that a subsequent conveyance in lots would actually demonstrate that it's a rededication without any mention of the dedication whatsoever. So we have really undisputed in the record that an average observer could not tell this is a private area and also in the record that it's a public right-of-way. You've several times said that Planned Parenthood was excluding Mr. Brindley because of his viewpoint. What is there in the record that indicates that that is the case as opposed to their, for example, saying we don't want people loitering around in front of our facility? I'll concede, Your Honor, that there is no direct evidence of that. It's more implicit by the fact that he's out there and the purpose for being out there is opposing Planned Parenthood. And they ask him to leave. None of the other folks in the cul-de-sac ask him to leave. It's just Planned Parenthood. And then he's told by the City of Memphis, well, you can go to Summer Avenue to protest. So that's it. So there is no direct evidence as far as we don't have testimony from a Planned Parenthood representative saying, yeah, we oppose his message. And just again, two questions from the factual record. This is a pretty short cul-de-sac, correct? I know he said he determined that his message could not be heard on Summer Avenue. But the message was directed to, I guess, passersby and people who might have been going in. Is that correct? Yeah, that's accurate, Your Honor. What he wants to do is he basically wants to have conversations and hand out literature. And so Summer Avenue is such a busy road that that's impossible. In fact, it'd be a traffic hazard if people stopped on Summer Avenue to do that. And on that traffic hazard, I know you've relied heavily on United Church of Christ. But in this cul-de-sac, you can see that there are no sidewalks. And the person standing there doing that would either have to be up on the grass of the property owners or in the street. Isn't that all? Did you find a case where the court has sanctioned the speech where the person is physically in the street to do that protesting? That type of thing? I don't know if I've cited the Frisbee v. Schultz case. There are cases out there that indicate that a street, like a sidewalk, is a public forum. And there are situations where some streets don't have sidewalks. So what that leaves is it's like a median, which is there in a cul-de-sac, or you stand on the curb. And that's what he was attempting to do. It's a cul-de-sac that really is not heavily trafficked by vehicles because it is a cul-de-sac. And so he viewed, and I believe correctly, that it'd be a safe place to stand. So Frisbee is your best case? For the street, I believe so. Anything else? If the court would like for me to submit additional information about that, I'm sure I can do research on that point. Are there additional cases in your briefing? No, no, Your Honor. Okay, thank you. Anything further? No, thank you. Thank you. We thank you all for your arguments and your briefing. We'll take the case under advisement, and we'll get back to you in due course. We have several other cases, but they are all on the briefs.